1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11

SISTERS ADMINISTRATION
SERVICES, LLC, a Washington limited
liability company,

                    Plaintiff,
        v.

A.T. CROSS COMPANY, LLC, a
Delaware limited liability company,

                    Defendant.

CASE NO. 2:25-cv-01299-TL

ORDER ON MOTION FOR
DEFAULT JUDGMENT

12
13
14
15
16
17

        This matter is before the Court on Plaintiff's Motion for Default Judgment. Dkt. No. 17.

18
19    Defendant has not appeared or otherwise participated in this case. On October 3, 2025, the Clerk

20    of Court entered Defendant into default. Dkt. No. 15. Having reviewed Plaintiff's motion,

21    Plaintiff's supplemental brief (Dkt. No. 19), and the relevant record, the Court GRANTS IN PART

22    and DENIES IN PART Plaintiff's motion.

23
24

# I.  BACKGROUND

This is a breach-of-contract case that arises out of one company's alleged failure to pay its bills for services rendered by another company. *See generally* Dkt. No. 1 (Complaint). Plaintiff is Sisters Administration Services, LLC, "an IT [information technology] management and consulting firm" located in Snohomish, Washington. *Id.* ¶¶ 1, 5. Defendant is A.T. Cross Company, LLC, a Delaware limited liability company headquartered in Providence, Rhode Island. *Id.* ¶ 2.

On November 4, 2021, Plaintiff and Defendant executed a contract under which Plaintiff "provide[d] Services to Defendant." *Id.* ¶ 6, pp. 6–21. For approximately 18 months, Plaintiff provided Defendant with information-technology services under the contract, and Defendant "paid its bill." *Id.* ¶ 7. However, after May 31, 2023, "Defendant regularly missed payments invoiced by Plaintiff." *Id.* ¶¶ 8–9. Plaintiff avers that, when asked about payment, Defendant responded with "requests to 'work with them', that payment was coming, and requests for patience as the company was struggling." *Id.* ¶ 11. Plaintiff characterizes Defendant's conduct as "roll[ing] out a debtor's greatest hits." *Id.* Despite Defendant's being in arrears, Plaintiff and Defendant executed a renewal agreement on or about March 13, 2024. *Id.* ¶ 12; *id.* at 30. Plaintiff alleges that, "[s]ince June 16, 2023, Defendant has paid Plaintiff $6,685.74 and accrued unpaid principal balances totaling $444,961.07." *Id.* ¶ 13.

On July 10, 2025, Plaintiff filed the instant civil action, pleading three causes of action: breach of contract, unjust enrichment, and promissory estoppel/detrimental reliance. *Id.* ¶¶ 16–29. On August 18, 2025, Plaintiff's agent effected service on Defendant. Dkt. No. 8. Defendant did not appear, answer, or otherwise respond to the complaint. On September 10, 2025, Plaintiff moved for an entry of default against Defendant (Dkt. Nos. 9, 12), and on October 3, 2025, the Court entered Defendant into default (Dkt. No. 15). On October 30, 2025, Plaintiff filed the

instant motion for default judgment. Dkt. No. 17. On November 13, 2025, the Court requested

further briefing on the issue of personal jurisdiction (Dkt. No. 18), and on November 20, 2025,

Plaintiff filed a supplemental brief with supporting materials (Dkt. No. 19).

## II.    LEGAL STANDARD

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616

F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts

prefer to decide cases on their merits "whenever reasonably possible." *Eitel v. McCool*, 782 F.2d

1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When

considering whether to exercise discretion in entering default judgments, courts consider a

variety of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of [a]
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action; (5) the possibility of a
> dispute concerning material facts; (6) whether the default was due
> to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. "None of the factors is dispositive in itself; instead, [courts] must balance all

seven." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 884 (S.D. Cal. 2021) (citation

omitted); *e.g.*, *Bd. of Trs. of San Mateo Hotel Emps. & Rest. Emps. Welfare Fund v. H. Young

Enters., Inc.*, No. C08-2619, 2009 WL 1033665, at *4–5 (N.D. Cal. Apr. 13, 2009) (finding

second and third *Eitel* factors dispositive when deciding to enter default judgment).

Courts reviewing motions for default judgment must accept the allegations in the

complaint as true, except for those regarding facts related to the amount of damages. *Geddes v.

United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in

the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v.

Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff &

1   *Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting

2   *Cripps*, 980 F.2d at 1267). Damages are also limited to what was reasonably pleaded. Fed. R.

3   Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is

4   demanded in the pleadings.").

### III.  DISCUSSION

### A.   Jurisdiction

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over

both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

### 1.   Subject-Matter Jurisdiction

The Court has diversity subject-matter jurisdiction under 28 U.S.C. § 1332. As to

diversity of citizenship, Plaintiff is a Washington limited liability company with its principal

place of business in Snohomish, Washington. Dkt. No. 1 ¶ 1. Plaintiff is therefore a citizen of

Washington. 28 U.S.C. § 1332(c)(1). Defendant is a Delaware limited liability company with its

principal place of business in Providence, Rhode Island. Dkt. No. 1 ¶ 2. Defendant is therefore a

citizen of Delaware and Rhode Island. 28 U.S.C. § 1332(c)(1). Plaintiff also satisfies the amount

in controversy requirement. Dkt. No. 1 ¶ 14.; *see* 28 U.S.C. § 1332(a). Plaintiff alleges damages,

not including attorney fees, of at least $506,461.81, as of July 10, 2025, the date of the

complaint. Dkt. No. 1 ¶ 14.

### 2.   Personal Jurisdiction

The Court may properly exercise specific personal jurisdiction over Defendant. "In a

diversity action in Washington, a federal court has personal jurisdiction over a non-Washington-

resident defendant if permitted by Washington's long-arm statute, because Washington's long-

arm statute comports with the federal due-process requirements." *Hunter v. Ferebauer*, 980 F.

Supp. 2d 1251, 1256–57 (E.D. Wash. 2013); *see Shute v. Carnival Cruise Lines*, 897 F.2d 377,

380 (9th Cir. 1990*), rev'd on other grounds*, 499 U.S. 585 (1991) (noting that Washington's

long-arm statute extends jurisdiction to the limit of federal due process). Since Washington's

long-arm jurisdictional statute is coextensive with federal due process requirements, the

jurisdictional analyses under state law apply in federal court. *See Bredberg v. Soil Sci. Soc. of

Am.*, No. C10-5724, 2011 WL 219695, at *3 (W.D. Wash. Jan. 24, 2011) (citing *Schwarzenegger

v. Fred Martin Motor Co.*, 374 F.3d 797, 800–801 (9th Cir. 2004)).

Under Washington's long-arm statute, a person submits to the jurisdiction of Washington

courts as to any cause of action arising from "[t]he transaction of any business within th[e]

state." RCW 4.28.185(1)(a). Further,

> [t]hree factors must coincide for the long-arm statute to apply,
> which encompasses both the statutory and due process concerns of
> exercising personal jurisdiction: (1) the nonresident defendant or
> foreign corporation must purposefully do some act or consummate
> some transaction in the forum state; (2) the cause of action must
> arise from, or be connected with, such act or transaction; and
> (3) the assumption of jurisdiction must not offend traditional
> notions of fair play and substantial justice, considering the quality,
> nature, and extent of the activity in the forum state, the relative
> convenience of the parties, the benefits and protections of state
> laws afforded the respective parties, and the basic equities of the
> situation.

*Failla v. FixtureOne Corp.*, 181 Wn.2d 642, 650, 336 P.3d 1112 (2014) (citation omitted).

As to the first factor, "under the due process clause, a nonresident defendant is not

subject to jurisdiction in a forum simply because the defendant has made a contract with a

resident of the forum." *Prosperity Recovery, Inc. v. IDC Techs., Inc.*, No. C20-3679, 2021 WL

6052780, at *7 (N.D. Cal. Dec. 21, 2021) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

478 (1985)). "Instead, to determine whether a contract with a resident of a forum subjects a

nonresident to personal jurisdiction in the forum, courts must evaluate 'prior negotiations and

contemplated future consequences, along with the terms of the contract and the parties' actual

course of dealing.'" *Prosperity Recovery*, 2021 WL 6052780, at *7 (quoting *Burger King*, 471 U.S. at 479); *see Raymond v. Robinson*, 104 Wn. App. 627, 637, 15 P.3d 697 (2001) ("To determine whether [defendant] had sufficient minimal contact within the state, we examine the entire transaction, including negotiations; contemplated future consequences; the terms of the contract; and the parties' actual course of dealing.").

Plaintiff's pleading alone does not allege sufficient facts to permit the Court to perform such a searching examination of its business relationship with Defendant. The only relevant fact that Plaintiff alleges in the complaint is that Plaintiff, a citizen of Washington, "began providing Services to Defendant pursuant to a SisCare Agreement dated November 4, 2021." Dkt. No. 1 ¶ 6. To establish the Court's personal jurisdiction over Defendant, Plaintiff "reli[es] on facts not alleged in the complaint," which "weighs against a finding of specific jurisdiction at this stage." *Prosperity Recovery*, 2021 WL 6052780, at *7 (citing *Eitel*, 782 F.2d at 1471–72). Still, "the Court considers all of Plaintiff's arguments in support of jurisdiction," *id.*, the bulk of which are found in Plaintiff's supplemental briefing on personal jurisdiction and its accompanying declaration (Dkt. Nos. 19, 19-1).

Here, it is apparent that the transaction at issue between Plaintiff and Defendant yielded sufficient minimal contacts between Washington and Defendant such that the Court may exercise specific personal jurisdiction over Defendant. Plaintiff asserts that "Defendant's corporate staff came to Washington about four times to direct the IT services [Plaintiff] provided to [Defendant]." Dkt. No. 19 at 2. Plaintiff asserts further that "[Defendant's] corporate staff held meetings with Plaintiff in Washington," and it is clear that the subject matter discussed at these meetings related to the specific contracted-for services that are the subject of this lawsuit. *See id.* Therefore, the first and second factors are satisfied.

As to the third factor, assumption of jurisdiction would not offend traditional notions of fair play and substantial justice. *See, e.g.*, *L.D.M. Worldwide Corp. v. Dalman*, No. 67404–8–I, 2014 WL 411897, at *5 (Wash. Ct. App. Feb. 3, 2014) (finding exercise of personal jurisdiction appropriate where "defendant's activities created an ongoing business relationship and future obligations with a Washington corporation," and where defendant "established a business relationship . . . that relied heavily on [plaintiff's] performance in Washington"). Here, Defendant traveled to Washington and contracted with a Washington company for work to be performed in Washington. If Defendant can travel to Washington multiple times to negotiate a service contract, it can reasonably be expected to travel to Washington to defend itself in court if and when it fails to pay for those services.

**B.    Default Judgment**

Considering the *Eitel* factors, the Court finds that entry of default judgment is warranted.

**1.    Factor One: Prejudice to Plaintiff**

"The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered." *GS Holistic, LLC v. City Smoke Corp.*, No. C24-1286, 2025 WL 1345083, at *2 (W.D. Wash. May 8, 2025). Without entry of default judgment, Plaintiff will be prejudiced. Plaintiff has attempted to litigate this case and vindicate its rights against Defendant. But Defendant has failed to appear or participate in this litigation, despite having been properly served. "Without default judgment, [Plaintiff] will suffer prejudice because it will 'be denied the right to judicial resolution' of its claim and will be 'without other recourse for recovery.'" *Id.* (quoting *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005)).

Therefore, the first *Eitel* factor weighs in favor of entering default judgment.

1

2

### 2. Factors Two and Three: Merits of Plaintiff's Claim and Sufficiency of Complaint

3

4

5

6

7

8

9

10

11

12

13

The second and third *Eitel* factors examine "the substantive merits of the plaintiff's claim and the sufficiency of the plaintiff's complaint." *Id.* In the Ninth Circuit, these factors are frequently analyzed together. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth Circuit has suggested that the second and third *Eitel* factors require a plaintiff to state a claim on which they can recover). These factors weigh in favor of an entry of default judgment if the allegations in a complaint sufficiently state a claim upon which relief can be granted. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Courts apply the *Iqbal-Twombly* standard, where a complaint is sufficient if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff has alleged three causes of action, which the Court will examine in turn.

14

#### a. *First Cause of Action: Breach of Contract*

15

16

17

18

Under Washington law, there are three elements in a breach-of-contract claim: (1) existence of a contract; (2) breach of that contract; and (3) damages. *See Corner Computing Sols. v. Google LLC*, 750 F. Supp. 3d 1208, 1214 (W.D. Wash. 2024) (citing *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wn. App. 455, 467, 404 P.3d 559 (2017)).

19

20

21

22

23

24

Plaintiff's complaint adequately pleads all three elements. First, Plaintiff alleges that it "began providing Services to Defendant pursuant to a SisCare Agreement dated November 4, 2021." Dkt. No. 1 ¶ 6; *see id.* at 6–21. This agreement included an automatic renewal clause that provided that the "agreement [would] auto-renew annually with an annual price increase not to exceed 5% for line items specifically listed as SisCare." Dkt. No. 1 at 12. On or about March 13, 2024, the Parties renewed the contract. Dkt. No. 1 ¶ 12; *see id.* at 23–31. Second, Plaintiff alleges

that after May 31, 2023, "Defendant regularly missed payments invoiced by Plaintiff." Dkt. No.
1 ¶¶ 8–9. Plaintiff alleges further that, "[s]ince June 16, 2023, Defendant has paid Plaintiff
$6,685.74 and accrued unpaid principal balances totaling $444,961.07. *Id.* ¶ 13. Third, Plaintiff
alleges that, "[a]ccounting for interest as provided for in the Agreements, Defendant owes
Plaintiff, upon information and belief, $506,461.81 as of [July 10, 2025]." *Id.* ¶ 14.

Plaintiff has thus sufficiently pleaded a breach-of-contract claim.

### b.    *Second Cause of Action: Unjust Enrichment*

"[A]s a quasi-contractual remedy, unjust enrichment does not apply where there is a valid
express contract between the same parties covering the same subject matter." *Taie v. Ten Bridges
LLC*, 568 F. Supp. 3d 1126, 1133 (W.D. Wash. 2021). Here, because a contract governed the
relationship between Plaintiff and Defendant, Plaintiff cannot bring a claim for unjust
enrichment. *See, e.g.*, *Surface Art, Inc. v. Tesserae Techs.*, No. C24-924, 2025 WL 1267433, at
*14 (W.D. Wash. May 1, 2025).

### c.    *Third Cause of Action: Promissory Estoppel/Detrimental Reliance*

Similarly, "[p]romissory estoppel does not apply where a contract governs." *Westcott v.
Wells Fargo Bank, N.A.*, 862 F. Supp. 2d 1111, 1116 (W.D. Wash. 2012) (citing *Klinke v.
Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 261 n.4, 616 P.2d 644 (1980)). Here,
because a contract governed the relationship between Plaintiff and Defendant, Plaintiff cannot
bring a claim for promissory estoppel. *See, e.g.*, *Bardy v. Cardiac Sci. Corp.*, No. C13-778, 2013
WL 5588313, at *6 (W.D. Wash. Oct. 10, 2013). As to detrimental reliance, "[d]etrimental
reliance is simply an element of the doctrine of equitable estoppel, which is a defense, not a
cause of action for damages." *Westcott*, 862 F. Supp. 2d at 1117 (citing *Kramarevcky v. Dep't of
Soc. & Health Servs.*, 122 Wn.2d 738, 747, 863 P.2d 535 (1993)).

Therefore, the second and third *Eitel* factors weigh in favor of entering default judgment only on Plaintiff's breach-of-contract claim.

### 3.    Factor Four: Sum of Money at Stake

The fourth *Eitel* factor requires the Court to "consider the amount of money at stake in relation to the seriousness of [the] [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "[W]hen the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014). Here, Plaintiff seeks $551,842.17, which includes $449,197.97 in judgment principal; $81,236.21 in prejudgment interest; $6,737.97 in service charges; $12,446.00 in attorney fees; and $2,224.02 in costs. Dkt. No. 17 at 3 (Motion for Default Judgment).

Here, Plaintiff seeks significant monetary damages—more than half a million dollars. "In general, courts disfavor default judgment if there are large sums of money involved." *Beck v. Pike*, No. C16-1, 2017 WL 530354, at *2 (W.D. Wash. Feb. 9, 2017). But such disfavor is mitigated where "the sum of money at stake is tailored to the specific misconduct of the Defendant." *Ferriss v. All. Publ'g, Inc.*, No. C15-5675, 2016 WL 7116110, at *8 (N.D. Cal. Dec. 6, 2016). Here, the amount sought is based on the contractually agreed-upon rate for services that Plaintiff provided to Defendant, applied specifically to the unpaid work that Plaintiff performed. This is a reasonable request for damages.

Therefore, the fourth *Eitel* factor weighs in favor of entering default judgment.

### 4.    Factor Five: Possibility of Dispute of Material Facts

There is little possibility that the core, material facts are in dispute. "When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014). "Where the moving party 'has

supported its claims with ample evidence, and [the defaulting party] has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.'" *Jung v. Liberty Mut. Fire Ins.*, No. C22-5127, 2023 WL 3204595, at *4 (W.D. Wash. May 2, 2023) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010)). Here Defendant's nonappearance has let Plaintiff's allegations—which are substantiated by both sworn testimony and the agreements between the Parties—go unchallenged.

Therefore, the fifth *Eitel* factor weighs in favor of entering default judgment.

### 5.    Factor Six: Whether Default is Due to Excusable Neglect

The sixth *Eitel* factor considers whether Defendant's default can be attributed to excusable neglect. "There is little possibility of excusable neglect when the plaintiff properly serves the defendant and the defendant is aware of the litigation." *Mesa Underwriters Specialty Ins. Co. v. Hulett*, No. C21-8284, 2022 WL 17218505, at *6 (C.D. Cal. Oct. 26, 2022). Here, a process server served Defendant's registered agent with the complaint on August 18, 2025. Dkt. No. 8 (affidavit of service) at 2. Thus, Defendant's default is not the result of excusable neglect.

Therefore, the sixth *Eitel* factor weighs in favor of entering default judgment.

### 6.    Factor Seven: Strong Policy in Favor of Decision on the Merits

The Court maintains a strong policy preference in favor of resolution of Plaintiff's claims on the merits. Whenever it is reasonably possible, courts should decide cases upon their merits. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). But "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). Federal Rule of Civil Procedure 55(a) "allows a court to decide a case before the merits are heard if defendant fails to appear and defend." *Landstar Ranger*, 725 F. Supp. 2d at 922. Here, Defendant

has not appeared and has not participated in this case, let alone defended itself, in any way. *See* Dkt. No. 12.

Therefore, "[s]ince [D]efendant failed to respond to [P]laintiff's claims, the seventh *Eitel* factor does not preclude the entry of default judgment against it." *Landstar Ranger*, 725 F. Supp. 2d at 922.

\* \* \*

All of the *Eitel* factors weigh in favor of entering default judgment or are neutral. The Court thus concludes that default judgment against Defendant is appropriate in this case.

**C.    Damages**

Under Rule 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Further, Plaintiff "is required to present evidence to 'prove up' the damages that [s]he is seeking." *Olive v. Robinson*, No. C20-356, 2023 WL 346622, at \*7 (W.D. Wash. Jan. 20, 2023) (first citing *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1053–54 (C.D. Cal. 2011), then citing Fed. R. Civ. P. 55(b), then citing LCR 55(b)(2)). "Plaintiff must support a motion for default judgment with a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." LCR 55(b)(2).

Plaintiff seeks \$537,172.15 in damages. Dkt. No. 17 at 3. This sum represents:

- \$449,197.97 in judgment principal—i.e., the money owed on the contract(s);

- \$81,236.21 in prejudgment interest;

- \$6,737.97 in service charges, as set forth in the contract(s);

Dkt. No. 17 at 3. The Court will discuss these line items in turn.

### 1.    Judgment Principal

Plaintiff provides the Declaration of Mary Burris, Plaintiff's CEO, to substantiate its request for damages. *See* Dkt. No. 17-2 ("Burris Decl."). Burris attached copies of Defendant's unpaid invoices to the Declaration. *Id.* ¶ 7; *id.* at 76–126.

The invoices provided by Burris aggregate to a sum that is higher than the amount requested in damages. Three invoices—Nos. 28345 (*id.* at 84–86), 28470 (*id.* at 88–90), and 28589 (*id.* at 92–94)—do not appear to have been included in Plaintiff's calculations. The Court calculates $450,219.22 in unpaid invoices, not $449,197.97. Still, as the Court's figure is *higher* than Plaintiff's, it cannot be said that the requested amount is unsubstantiated by supporting documentation. The Court therefore Awards Plaintiff damages of $449,197.97, as requested.

### 2.    Prejudgment Interest

Under Local Civil Rule 55(b)(2)(B), "[i]f plaintiff is seeking interest and claims that an interest rate other than that provided by 28 U.S.C. § 1961 applies, plaintiff shall state the rate and the reasons for applying it." Here, Plaintiff asserts that it is entitled to 12% prejudgment interest, "as permitted by Washington law." Dkt. No. 17-2 ¶ 12. "The statutory rate of prejudgment interest in Washington is twelve percent per annum." *BVB Express, LLC v. Straight Logistics, Inc.*, No. C24-848, 2024 WL 4371550, at *3 (W.D. Wash. Oct. 1, 2024) (citing RCW 19.52.010(1)). The 12-percent rate applies "where no different rate is agreed to in writing between the parties"—that is, where a different rate is not specified in the contract (or contracts) at issue. RCW 19.52.010(1). "Prejudgment interest accrues from the date of the default or breach at issue." *BVB Express*, 2024 WL 4371550, at *3 (citing *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 34, 442 P.2d 621 (1968)).

Plaintiff's motion for default judgment seeks $81,236.21 in prejudgment interest. *See* Dkt. No. 17 at 3. The contracts do not specify a prejudgment interest rate in the event of breach,

so Plaintiff asserts that the 12-percent statutory rate applies. *See* Dkt. No. 17-2 ¶ 10. In a

declaration, Plaintiff's CEO Mary Burris avers that she calculated accrued interest "by

determining multiplying twelve percent (12%) simple interest against the principal of each

invoice due, dividing by twelve (12) to determine monthly interest, then multiplying that figure

by the number of months that have accrued from the date that is thirty (30) days past the

applicable invoice due date." *Id.* ¶ 12.[1] The Court, having applied Burris's method, calculates

prejudgment interest to be $76,771.54.[2]

### 3.    Service Charges

The contract(s) provide for charges—called a "service" charge in the Initial Agreement

and a "late charge" in the Renewal Agreement—of "1.5% per month on all invoices that are not

paid within thirty (30) days of the invoice date." Dkt. No. 17-2 ¶ 10; *see id.* at 17, 33. These

charges are not recoverable under Washington law.[3]

---

[1] Although this method comports with the original contract, which provides that "[p]ayment on invoices shall be thirty (30) days following the date of the invoice" (Dkt. No. 17-2 at 17), it conflicts with the terms of the renewal agreement, which provides that "Client shall pay the full amount on any invoice as owed to Provider on the first (1st) day of each month" (*id.* at 33). Because using the original contract's 30-day standard for establishing an invoice's due date is more favorable to Defendant when calculating prejudgment interest—i.e., it necessarily establishes a *later* due date for an invoice than the first-of-the-month standard—the Court will apply it here, especially given Burris's endorsement of such a standard in her declaration.

[2] Burris's calculations erroneously include one extra month of interest for the following invoices: Nos. 28278, 28522, 28648, 28764, 29047, 29178, 30040, 30142, 30206, 30275, 30346, 30429, 30508, 30588, 30680, 30741, 30818, 30893, 30971, 31046. *See* Dkt. No. 17-2 at 128. For example, Invoice No. 28278, dated July 7, 2023, was due August 6, 2023. *See id.* at 83. The balance on the invoice was $22,837.53, which yields a monthly interest accrual of $228.38. *See id.* Between August 6, 2023, and October 30, 2025—the date of the Burris declaration—26 months lapsed. Therefore, $5,937.76 in interest had accrued, not $6,166.13, as calculated by Burris (The Court rounded to the nearest cent after completing all calculations).

[3] The Burris Declaration indicates that Plaintiff applied a one-time 1.5% service charge to each unpaid invoice. *See* Dkt. No. 17-1 at 128. This accords with the language of the original contract between the Parties, which states that "[a] service charge . . . , not to exceed 1.5%, will be assessed on all payments received later than thirty (30) days of the invoice date. *Id.* at 17. The renewal agreement, however, provides for a 1.5% service charge to be assessed "*per month* . . . for all invoiced amounts not paid within thirty (30) days following Client's receipt of that invoice . . . ." *Id.* at 33 (emphasis added). In any event, because the Court finds that the service charges are not recoverable under Washington law, the issue is moot.

1    "Under Washington law, a liquidated damages provision is enforceable, but a penalty is

2    not." *KIC, LLC v. Zhejiang Dicastal Hongxin Tech. Co. Ltd.*, No. C19-5660, 2021 WL 3861635,

3    at *9 (W.D. Wash. Aug. 30, 2021); *see Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 558,

4    730 P.2d 1340 (1987) ("True liquidated damages clauses, those that are not penalties, are favored

5    and will be upheld."). "[A] penalty is a sum inserted into a contract, not as the measure of

6    compensation for its breach, but rather as a punishment for default." *Buchanan v. Kettner*, 97

7    Wn. App. 370, 373, 984 P.2d 1047 (1999). The language regarding the service charge reflects

8    that it is a punishment for default or a penalty and, therefore, is not enforceable.

9    Even if the Court assumes, *arguendo*, that the service fee is more akin to liquidated

10   damages, it would still not be enforceable. Washington courts apply a two-part test to determine

11   whether a liquidated-damages clause is enforceable. *Walter Implement*, 107 Wn.2d at 559. "First,

12   the amount fixed must be a reasonable forecast of just compensation for the harm that is caused

13   by the breach. Second, the harm must be such that it is incapable or very difficult of

14   ascertainment." *Id.* "Determination of whether the test is met depends upon the facts and

15   circumstances of each case." *Id.*

16   Here, as to the first part of the test, neither the contracts nor Plaintiff's briefing

17   demonstrate how the service charge/late charge represents a reasonable prediction of the harm

18   that Plaintiff would suffer as a result of late payment. The contracts simply impose, without

19   explanation, a 1.5% charge (either once or recurring monthly) "for all invoiced amounts not paid

20   within thirty (30) days following [Defendant's] receipt of that invoice (the 'Payment

21   Deadline')." Dkt. No. 1 at 34; *see id.* at 18. This is not enough. "In cases where courts have

22   enforced provisions for liquidated damages, the party seeking them explained their forecast and

23   its reasonableness with some degree of specificity." *Klein v. Kim*, No. C20-1628, 2022 WL

24   11216477, at *5 (W.D. Wash. Oct. 19, 2022) (collecting cases). As to the second part of the test,

Plaintiff provides no information at all to indicate that the harm resulting from late payment would be difficult or impossible to calculate. Therefore, the Court declines to award Plaintiff service fees.

**D.     Attorney Fees and Costs**

    **1.     Attorney Fees**

"To recovery attorneys' fees and costs on default judgment, the plaintiff 'must specify the judgment and the statute, rule, or other grounds [so] entitling' her." *In re Ferrell*, 539 F.3d 1186, 1192 (9th Cir. 2008) (quoting Fed. R. Civ. P. 54(d)(2)(B)(ii)). Additionally, in assessing requests for attorney fees, courts in this Circuit consider the reasonableness of the request "based on the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate [the lodestar calculation], and then adjusted in accordance with the factors laid out in *Kerr v. Screen Extras Guild, Inc.*" *N. Seattle Health Ctr. Corp. v. Allstate Fire & Cas. Ins. Co.*, No. C14-1680, 2016 WL 4533055, at *5 (W.D. Wash. Jan. 27, 2016). The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992); *accord Burkhalter v. Burkhalter*, Nos. 22-55909, 22-55910, 22-55912, 22-55913, 2023 WL 7490053, at *3–4 (9th Cir. Nov. 13, 2023) (finding abuse of discretion where a court failed to address relevant reasonableness factors set forth in *Kerr* after calculating the lodestar when reviewing a request for attorney fees). The *Kerr* analysis must be completed even

in the context of motions for default judgment. *See N. Seattle Health Ctr. Corp.*, 2016 WL 4533055, at *5.

Plaintiff requests $12,446.00 in attorney fees. Dkt. No. 17 at 2. Plaintiff's contracts with Defendant provide that "[t]he prevailing party in any action . . . to enforce . . . this Contract shall be entitled to reasonable attorney's fees (and expert's fees) in addition to all other costs and other remedies at law or in equity." Dkt. No. 1 at 19; *see id.* at 44–45. Plaintiff has provided a declaration that attests to the reasonableness of the request (*see* Dkt. No. 17-1 ("Barrera Decl.")), as well as an itemized spreadsheet that illustrates the costs incurred in enforcing the contracts.

### a.    *Hourly Rates*

In determining a reasonable hourly rate, courts consider "the experience, skill and reputation of the attorney requesting fees," *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996) (quoting *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995)), as well as "the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The relevant community is the forum in which the district court sits." *Maxitransfers LLC v. Envios La Costenita 1, Inc.*, No. C24-1016, 2025 WL 2042297, at *7 (W.D. Wash. July 21, 2025). "The party seeking an award of attorney's fees bears the burden of producing 'satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services' by comparable lawyers." *Id.* (quoting *Blum*, 465 U.S. at 895 n.11). "District judges can also 'consider the fees awarded by other judges in the same locality in similar cases,' and rely on their own knowledge and familiarity with the legal market in setting a reasonable rate." *Id.* (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008)).

Here, Plaintiff has provided a declaration from one of its attorneys (Dkt. No. 17-1 at 1–3) and a detailed ledger (*id.* at 4–10). Plaintiff's counsel employed two attorneys, a paralegal, and

an office manager in this litigation. *See* Dkt. No. 17-1 ¶¶ 5–8. Attorney Paul A. Barrera, a

shareholder at the retained firm with some eight years of experience, billed $405.00 per hour,

then increased that rate to $435.00 per hour on May 1, 2025. *Id.* ¶ 5. Attorney Martin Kreshon, of

counsel at the firm, with some 13 years of experience, billed $375.00 per hour. *Id.* ¶ 6. Paralegal

Hannah Lough, who has four months of experience, billed $145.00 per hour, then increased that

rate to $210.00 per hour on May 12, 2025. *Id.* ¶ 7. Office manager Lisa Lou Gogal, who has four

years of experience, worked as a paralegal on this case and billed $175.00 per hour. *Id.* ¶ 8.

The Court finds that these rates are reasonable and in line with rates charged by attorneys

in the Seattle legal community. *See, e.g.*, *Maxitransfers*, 2025 WL 2042297, at *10 (approving

fee rates of $600–650 per hour for partners, $400 per hour for an associate, and $195 per hour for

paralegals); *Olson v. Nw. Motorsport, Inc.*, No. C20-1616, 2024 WL 2959756, at *2 (W.D.

Wash. June 12, 2024) (approving fee rates of $425–450 per hour for partners and $200 per hour

for paralegals); *Innovative Sports Mgmt., Inc. v. Cafeconleche Inc.*, No. C20-449, 2021 WL

2711461, at *1 (approving fee rate of $350 per hour for attorney and $175 per hour for

paralegal).

### b.    *Number of Hours*

Plaintiff bears "the burden of documenting the hours expended on this matter and

establishing their reasonableness." *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1137

(W.D. Wash. 2019). "The hours claimed by a party may be reduced by the court if 'the

documentation of the hours is inadequate'; 'if the case was overstaffed and hours are duplicated';

or 'if the hours expended are deemed excessive or otherwise unnecessary.'" *Maxitransfers*, 2025

WL 2042297, at *9 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.

1986)).

1    Having reviewed the ledger, the Court finds no overstaffing or duplicate hours. The Court

2    cannot identify any excessive or otherwise unnecessary billing. Line items that indicate the work

3    performed by each individual are in accord with expected activities associated with each

4    individual's specific job. Therefore, the Court finds the amount of work, as billed, is reasonable.

5                    c.        **The *Kerr* Factors**

6            Having determined the lodestar amount, "the [C]ourt must decide whether to enhance or

7    reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already

8    subsumed in the initial lodestar calculation." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th

9    Cir. 2000) (citing *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996)). "A

10   'strong presumption' exists that the lodestar figure represents a 'reasonable fee,' and therefore, it

11   should only be enhanced or reduced in 'rare and exceptional cases.'" *Id.* at 1119 n.4 (quoting

12   *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

13   "Among the subsumed factors presumably taken into account in either the reasonable hours

14   component or the reasonable rate component of the lodestar calculation are: (1) the novelty and

15   complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of

16   representation, (4) the results obtained, and (5) the contingent nature of the fee agreement."

17   *Morales*, 96 F.3d at 364 n.9 (citation modified).

18           Here, "[t]he Court sees no reason to adjust this figure on the basis of the non-

19   subsumed *Kerr* factors, nor does Plaintiff request such an adjustment." *Waste Action Project v.*

20   *Astro Auto Wrecking, LLC*, No. C15-796, 2016 WL 11621975, at *1 (W.D. Wash. June 30,

21   2016); *see Snell v. N. Thurston Sch. Dist.*, No. C13-5488, 2014 WL 2154488, at *2 (W.D. Wash.

22   May 22, 2014) ("The fees and costs sought are reasonable under the relevant authorities, and

23   there is no compelling reason to reduce them."). Therefore, the Court finds that the $12,446.00

24   requested by Plaintiff is reasonable and will award that amount.

2.    **Costs**

Plaintiff seeks an award of $2,224.02 in costs. Dkt. No. 17 at 2. Plaintiff has provided an itemized spreadsheet that describes these expenditures. *See* Dkt. No. 17-1 at 10. Although the original contract between the Parties provides for the award of costs to a prevailing party in an action to enforce the contract (*see* Dkt. No. 1 at 19), the Renewal Agreement does not (*see id.* at 44–45). It is impossible to distinguish between costs that Plaintiff incurred enforcing the first contract and costs that Plaintiff incurred enforcing the second contract. *See* Dkt. No. 17-1 at 10. Some costs, such as $3.00 for conformed copy of complaint; $3.43 in postage to mail waiver of summons packet to Defendant; $0.69 for self-addressed stamped envelope for waiver of summons packet to Defendant; $19.00 for Defendant's courtesy copy of complaint and waiver of summons forms; $405.00 for this Court's filing fee; and $92.10 for service of the summons, complaint, and discovery on Defendant, are indivisible—Plaintiff would have only incurred them once, regardless of whether Plaintiff were suing to enforce one or both contracts. *Id.* Therefore, the Court will award costs for such line items.

The remaining costs, however, are reasonably attributed to the enforcement of both contracts, and the Court cannot determined how much was incurred enforcing the original contract, and how much was incurred enforcing its successor. In any event, these costs relate to $1,700.80 in "Westlaw Legal Research Charges." Dkt. No. 17-1 at 10. In the Ninth Circuit, such costs are recoverable "if separate billing for such expenses is the prevailing practice in the local community." *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006). Here, however, "Plaintiff has not presented any evidence that this is the prevailing practice in the local community . . . ." *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541, 2018 WL 5013764, at *12 (W.D. Wash. Oct. 16, 2018)

(declining to award "costs of computerized research"). Therefore, the Court declines to award electronic-research costs.

The Court therefore AWARDS $523.22 in costs.

## IV.    CONCLUSION

Accordingly, Plaintiff's Motion for Default Judgment (Dkt. No. 17) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1)    Judgment is ENTERED as to Plaintiff's breach of contract claim only.

(2)    Plaintiff is AWARDED $449,197.97 in damages arising from Defendant's breach of contract.

(3)    Plaintiff is AWARDED $76,771.54 in prejudgment interest.

(4)    Plaintiff is AWARDED $12,446.00 in attorney fees. Plaintiff's request for costs is GRANTED IN PART and DENIED IN PART, and Plaintiff is AWARDED $523.22 in costs.

Dated this 15th day of January, 2026.

Tana Lin
United States District Judge